Good afternoon, your honors. May it please the court. Sean Brady on behalf of the appellants. If I may, I would like to request five minutes for rebuttal. This case primarily involves a Second Amendment challenge to the Orange County Sheriff Sandra Hutchens' official policy choice to deny to all law-abiding, competent adults in her county the license that is required under California law to publicly carry a firearm, unless they can prove to the sheriff's subjective satisfaction that they have a good enough reason to want to engage in armed self-defense. The threshold question here is whether the Second Amendment right to keep and bear arms extends outside the home. And we submit that the Supreme Court in both the Heller and McDonald decisions were left very little, if any, doubt on that score. It does indeed extend outside the home. In fact, every circuit court to have considered the issue thus far has not limited it to the home. Isn't that only with respect to complete bans on carrying guns? Well, your honor, we submit that this is a complete ban. Our clients are not able to carry under, there's no manner of prevention. No, it's not a complete ban. California's regulatory system has many, many, many exceptions. In fact, I think you include them all in your brief. And it's only if we accept your argument that it's like arbitrary and unfettered discretion in the sheriff that would preclude your clients and everybody else from carrying a gun. And it seems to me that you can't describe this as a complete ban. Well, your honor, respectfully, I think we can. This is not, in aggregate, those exceptions, though many, and the Penal Code goes on for several pages with these exceptions, if you look at them in aggregate, they provide little, if any, availability to have a firearm available in public. I mean, unless you're a veteran going to a march or a person involved in the sale of firearms, transport it to and from your store locations, there's nothing that allows anybody to have a firearm available. You know, what the sheriff relies on is the affirmative defense that California law provides, that if you happen to have a firearm, which I like to call the magically appearing gun theory, because there's no way to have it there in the first place, but California allows you to, if you have it there, just like felons and people v. King, they're allowed, if a gun happens to come in their possession, they can use it to defend themselves. That's the policy decision. But you can buy a gun. You go into a store and buy a gun. Are you saying it's not the case? Yes, you may, your honor. And transporting, if it is a handgun, and as a matter of fact, now long guns as well, based on the new law, they don't have to be locked, but they have to be in a container that is obvious a long gun is in it. But for handguns, the handgun has to be in a locked container and unloaded, or perhaps in the trunk. That's an alternative to having it in a locked case. But it's not available. And I think that that's a critical point to address. Well, then you can take it home and you can use it there if you need to defend yourself. Correct, your honor. Our position is that what this case is about, you know, it's fairly settled. The Heller and McDonald cases settled that inside the home is fine. We're asking that we have the right to a license to carry outside the home. And getting back, I believe, to get back to the point. Wait, you're specifically asking for a license to carry concealed weapons? Yes, your honor. And if I may, I will get to that point. I really believe that this is a critical issue to address your previous concern that the Supreme Court described, they defined the right to bear arms, they used Justice Ginsburg's description from the Muscarello decision that said that it is a right to carry and be armed and ready for the purposes of self-defense. Having a handgun in a locked container unloaded, albeit an ability to transport the gun to exercise the right in your home, is not the right to be armed and ready in case of confrontation like the court described. Getting to your question, your honor, about concealed versus open carry. So what you're arguing is that every person who has a concern about his or her safety ought to be able to carry a weapon on his person, his or her person, that's concealed. If they satisfy all the other myriad regulations in California law and in the sheriff's policy. It's not that every person gets the right just because they have a need. Well, you do have the right, right? That's the nature of a fundamental right. It's your, it's not our burden, it's not my client's burden to prove that they're not able to exercise this right. It's the government's burden to prove a reason why they shouldn't be able to. And we're not disputing that, our clients are disputing that they should have to have a license, that they should go through training, that they have to get three letters of recommendation from their neighbors, do background checks, the myriad of regulations that are in place. The sheriff has a six-page policy full of them. The one issue is if, and I believe this is critical, this is the threshold issue, if there is a right, a fundamental right to bear arms, as the Heller court indicated, then a policy like the sheriff's whereby she can say, well, as a default, you don't get to exercise that right unless you can prove to me that you have a sufficient reason, is per se unconstitutional because it's not a right. It's by definition not a right. It's a privilege. I think an example by analogy that would be quite illustrative here is, the privilege of a driver's license. How about the right to free speech? Sure. Okay, so there's all sorts of restrictions on free speech that are allowed without courts deeming that a total elimination of the right. For example, time, place, and manner restrictions, shouting fire in a crowded theater, go on all day. So why can't, and nobody's ever said that those restrictions eliminate your fundamental right to speak. And all of those restrictions are allowed on speech, which I would submit is a far less dangerous action than carrying a concealed weapon. And I think the stuff that's been submitted here would support that. A couple things. Yes, you know, whether, you're saying in those instances, time, place, and manner restrictions, right? We're talking about, we're not disputing that. Heller is fairly clear, the Supreme Court is clear on that. The policy is, if a generalized fear of danger does not support the issuance of a license, whereas anything specific your clients could come up with would let them, would justify. Like, for example, as a judge, I'm probably in sufficient danger that I could go get a license. I actually once tried, but I couldn't use the gun. I was not very good at it, so... To be frank, in L.A. County, you might not be able to, Your Honor, but that's a separate issue. And I think that goes to... You know, they actually had me up there for training. I was making a joke. No, you're allowed, it's just I have to get them. But to get to your point, this is not a regulation of the right. This is a, they're saying that either you have a sufficient reason to exercise the right, and you can then do it, and it's up to the subjective discretion of the sheriff, or you don't have a good enough reason, and then you don't get to exercise the right at all unless you accept, Your Honor's position, that there are alternatives. And is that because open carry is otherwise prohibited? Yes, Your Honor, exactly. There's no other alternative. So either you have a license authorizing you to carry a weapon concealed, or you can't have a weapon at all that is readily accessible and ready for use. That is accurate, Your Honor. In less populated counties, I believe it's the number 200,000 is the threshold under the penal code, they give the sheriff's discretion, I should say the California Penal Code gives the sheriff's discretion to choose either open or concealed carry licenses. And that's California's, I believe, you know, that's their right. And to be clear, by saying that the right is only to open carry, by saying concealed carry is not part of the right, would be to actually limit California's and legislature's discretion to decide what's best for their communities. Doesn't California's statute have a requirement that you show good cause, and all this is is the sheriff's implementation of the good cause requirement? That is accurate, Your Honor, and that's exactly why we fashioned this. We believe this is the least intrusive way. This is, according to the doctrine of constitutional avoidance, we're not going after this statute, per se. And the reason for that is the statute can be applied constitutionally, and in fact, in the vast majority of counties within California, the sheriffs apply it just in that manner. They have, the relief that my clients are seeking here is already available to the vast majority of counties in California, and in fact, 41 states in the union. This is, Sheriff Hutchins' policy is actually the vast minority here. She's in a very small camp of. How about the city of Los Angeles? The city of L.A. would be in that camp as well, Your Honor, as well as the county. And the county of San Diego, which brings me to, as our case, is it, are we, should we be holding it for Peruta, or I think Judge Pragerson might also have a similar case. I would not pretend to tell the court how to manage its caseload. It would put the result in Peruta control. It's the issue of the same, is what we're trying to. Yes. If that court were to rule on the substance there, there were some potential concerns about a remand because there was a change in the law. You know, the lower court's ruling in the Peruta case said because there was, there was even more ability to carry, under these exceptions, to carry, during the Peruta lower court hearing, you were able to, in a loophole in the law, unloaded open carry, as they called it. You could carry an unloaded gun on your hip and your magazine on the other side. And the legislature has since foreclosed that option. But the lower court's ruling was because that option was available, they basically gave it an alternative, there was an alternative means to exercise the right. They said that that was. We submitted that it wasn't. So there may be a change in the law that requires a remand. We don't think that it will happen, but it's possible. But does the San Diego County policy also contain this general prohibition on merely citing personal protection or self-defense as not sufficient justification? Yes, Your Honor. Orange County and San Diego's policies are effectively identical. Changes of verbiage, but they're effectively identical. And L.A. County, too. L.A. County, Your Honor, is, I believe in, the number of permits, I believe, is in the hundreds or 200s, and there's, you know, millions of residents versus. What is the issue with regard to the 600 and some odd permits that were already issued? There's something in the record about the sheriff sending a letter out threatening to revoke. Is that in the record? If that is in the record, that happened. My recollection, I don't know if that has any relevance to this case, Your Honor, but for your curiosity. Well, I can ask counsel for it. Sure. My understanding is that when Sheriff Corona, the previous sheriff, there were some issues. The policy was more conservatively administered? Well, liberal, actually. Yeah. He was handing out his friend's guns, right? Exactly, Your Honor. And I think that that actually hits the nail on the head in that these policies, to allow a sheriff discretion, if this were to accept that there is a right. He was also indicted on corruption. Yes, yes. Sheriff Corona is a whole. I would not put Sheriff Hutchins anywhere near. Nobody's questioning the integrity of Sheriff Hutchins. Let's make that clear. Let me be clear that I am in no way. As a matter of fact, I believe that the reason she came in and made that move was to maintain the mantle of, you know, or to remove the mantle of corruption and be clear. And I'm in no way suggesting that Sheriff Hutchins is corrupt in this. But I think that the court should understand, if you're going to say that there is a right, you have a fundamental right to do something, then to allow a sheriff to have discretion as to whether you have a good enough reason to want to exercise that right is antithetical to the way fundamental rights work. But somebody's got to have discretion. Otherwise, simply citing to personal protection is not, is, I mean, what does that mean? What that means is exactly what the Heller court and the McDonnell court, which is the same court, said is that self-defense is the central component to the Second Amendment rights. So if you're to accept that there's a Second Amendment right to bear arms in public, then, and the state wants to require a license to do so, then how could you say that self-defense is not a sufficient reason to want to exercise the right? So your argument, as I understand it, I think, is that you read Heller to say that if there is a core Second Amendment constitutional right to self-defense, which is at its zenith in the home, that must mean that that core constitutional right to self-defense extends outside the home into certain areas of the public that have not otherwise been carved off limits because they are especially sensitive areas. Correct, Your Honor. The court said that it is the right to keep and bear arms and said that the central component of each of those, they made no distinction between keep and bear in saying that the central component of the right was self-defense. But they do make clear that keep and bear are two separate activities and two separately protected activities. So your argument, if I'm following it right, is that citing as justification for the concealed weapons permit, I want to have this permit for self-defense is enough. Yes, Your Honor. And the sheriff doesn't need to exercise any discretion. Not on your reason for wanting to. However, yes, she still maintains some discretion, right? Because not, for example, and that's why we're... Well, she may decide that because of your prior history of mental instability, you don't, I'm not going to... Moral character, separate issues. But even on the good cause, and that's why I think this is, why we're not attacking the statute facially, is that the good cause requirement is not necessarily unconstitutional. If somebody came in and said, hey, I want a concealed weapons permit because I want to engage in, you know, I want to engage in a business like a bodyguard, right, or I want to protect my property, my money, which ironically is sufficient good cause under the sheriff's current policy, that would be okay to say no. So she does maintain some discretion. We're just saying if the State of California is going to set up a scheme where you have to ask for a license and prove, you know, prove certain factors, that one of the factors cannot be do you have a good enough reason to exercise a right, because then by definition it's not a right, it's a privilege. Is there any judicial review or right to some sort of administrative review if the sheriff denies a permit? I don't believe there's any required under the penal code, but most sheriffs do allow an appeal process. They'll have their in-house... Within the department. Yes, and it's at their discretion again. So there's no provision for judicial review. You can't seek a writ of mandate... You can't seek a writ of mandate, yes. In the superior court? You can't seek a writ of mandate for discretion, yes. Let me ask you another question. If we agree with you that Heller means that you have a right to bear arms in places beyond the home, is there any limitation on that rule? As to somebody's... To what extent somebody can exercise the right beyond the home? Right. Would you say there are any limitations to your rule? Oh, yes. I mean, the Heller court laid out... They laid out certain exceptions for people having guns in the home. But in public as well, they said sensitive places like schools and government buildings. Sensitive places, but what about shopping malls? It would depend on whether that's public or private property. Movie theaters. Movie theaters. If those are owned, if that's privately owned property, the Second Amendment doesn't force an owner of a movie theater or owner of a mall to require people to, you know, require... What about county fair? That would be a different issue. And whether that would be a sensitive place is something that may need to be litigated in the future. That's what we're at. We're at the very far end of the spectrum here. We're at zero. We get zero exercise... Maybe we're at the Navy Yard. Possibly. That would be up to... That's government land. That's a military... Well, it's public. Sure, but it's secured off by armed guards. Well, I assume there's probably a CFR provision that, at least on the books, prohibits people from bringing weapons on a military basis. I believe that the military does have... And that would be, again, something... That's not even where we're at right now. If we have a right, all this court needs to do is declare whether there's a right or not, and all the machinations of what that would entail and all the regulations that could be done are a question for another day. And with that, I would like to... Reserve 10 seconds. Thank you. All right. Time to go. Good afternoon, Your Honors. May it please the Court. Mary Ann Van Riper, Deputy County Counsel on behalf of the Orange County Sheriff's Department and Sandra Hutchins. There is one main issue here, and that is whether the district court abused its discretion in denying the plaintiff's motion for preliminary injunction, seeking to enjoin the enforcement of her policy. Appellants keep trying to morph this case into a case discussing the entire California statutory scheme related to gun control. But all the sheriff is doing is administering her policy under the California Penal Code. Well, it's more than that. As I understand what the district court said, the district court said there is no reasonable likelihood that they will prevail on the merits because they can't show the violation of a constitutional right. But suppose that we conclude that the district court was wrong, that there is, in fact, a constitutional right of self-defense. It reaches its zenith in the home, but it extends outside the home. Wouldn't that undermine the district court's legal analysis and, therefore, as a matter of law, constitute an abuse of discretion for misapplication of the winter factors? Well, it would be a harmless error because there is no right to a concealed weapons outside the home. Well, that gets back to the question I asked your opponent, and that is, if California law is such that either you have a permit to carry a concealed weapon or you can't carry openly, then I'm having a hard time seeing where the Constitution is being respected by a policy that basically does not recognize self-defense as a reason for allowing a weapon to be carried outside the home. With all due respect, Your Honor, I believe that would be for a different case. That is this case, Ms. Van Riper. Your client will not recognize self-defense as a justification for issuance of a license. Without a license, these folks can't carry in Orange County anywhere. So how is the sheriff respecting that constitutional right if we decide that the Second Amendment extends beyond the home? If you decide, if this Court decides that the Second Amendment extends beyond the home, there is certainly a substantial relation to an important government interest. It meets the intermediate scrutiny standard. So that's what I was going to ask you also. So if we get to the next step, if we conclude that HELLA should be extended beyond the home, articulate, first of all, why the intermediate standard of scrutiny applies, and, I guess, second, how the sheriff's policy meets it. Okay. If you believe that HELLA extends the right to carry outside the home, intermediate scrutiny applies. It wouldn't be strict scrutiny because it doesn't go to the core of self-defense within the home. So your position is that the only core right is having an operable weapon in the home? Yes. Well, how do you square that with the language in HELLA reaffirmed in McDonald that there is a core constitutional right to self-defense, which is at its zenith in the home? At its zenith in the home, because HELLA didn't extend that core right outside the home. It was at its zenith. All it had to decide was whether or not the District of Columbia could forbid people from having an operable firearm in their home for self-defense. But I guess you and I are reading the language much differently. You want to read it very narrowly, and I don't understand what which reaches its zenith in the home means if the right doesn't extend outside the home to some degree. And then I think we are in the intermediate scrutiny land, you know, how the means fit the ends here. Yes. Well, if you look at the language in HELLR, the HELLR court specifically mentioned, before they mentioned all of the presumptively lawful prohibitions, they mentioned the concealed weapon. They specifically mentioned the concealed weapons. And then right after mentioning all the regulations with respect to concealed weapons, they mentioned the other presumptively lawful regulations. And if you look at over 100 years ago in Robertson v. Baldwin, they said the right to keep and bear arms is, and I quote, not infringed by laws prohibiting the carrying of concealed weapons. So I believe that... But that assumes, does it not, that there is some alternative to carrying a weapon besides concealed? And as I understand the state of the law, at least as enforced in Orange County, you can't carry a weapon openly. So if you can't have a permit and you can't carry it openly, how is the sheriff respecting the Second Amendment right here outside the home? I don't think it's the sheriff's job to try and figure out what all the laws in California are. She has to just administer her law. But the question is whether or not she's administering it in an unconstitutional fashion, and that's the issue that we're wrestling with. Because the result of her policy is quite clear. It doesn't recognize self-defense. If that is in truth a fundamental constitutionally protected right under the Second Amendment, that's not good enough under Sheriff Hutchins' policy. I believe it's just a regulation. It's a regulation. It's not a complete ban. People can get concealed weapons permits if they show good cause. But not self-defense. Self-defense itself is not enough. Right. And the Supreme Court says that there is a core constitutional right to self-defense. So how do I square the Supreme Court's language with the sheriff's legal position? Well, I think if you read a lot of the other cases that have discussed Heller, a lot of cases, Kuchelski and a whole litany of cases we've cited in our brief, do not extend Heller reasoning to the core fundamental right outside the home. But in those, as I read those cases, there are exceptions in other states that are not present in California. I don't read those cases to say nobody can carry openly if they can't have a concealed weapons permit. Well, there is one case. I mean, even in New York, you're allowed to carry openly if you're going hunting or target shooting. Here, apparently, that's not the case. Okay. Well, I'm butchering this name, but in the case of Pisotowski v. Felko, in that case the statute required a permit for open or concealed carry. It was very similar to California's. And they basically said, in that case, they needed an urgent necessity for self-protection before a permit would be issued. And that was upheld. So some courts have followed what I believe this court should do and find that the right does not extend beyond the home, or alternatively the rational basis, excuse me, the intermediate scrutiny would apply. So can I just clarify something? Because it's a long day and I just want to make sure I have this right. It's California law that has the California state statutory scheme that has the general ban on open carry. That's not the sheriff's regulation. Correct. So Judge Thomas' question, I'm understanding, he's saying when you read the policy or the regulation in conjunction with the state's general ban, that's when you might have a problem. That's what I believe he is saying. Okay. That's your understanding. So if that's the case, then isn't this really an attack on the state legislative scheme? Yes. And I really wish one of those fine attorney generals would have stayed here to argue their legislative scheme. Maybe you could get that guy from the first case. Yeah, it was really good. No, but shouldn't they be in this case? Because, I mean, I know that the plaintiffs or, I don't know, McKay et al. argued that they're not attacking the state scheme, but they did in their brief. It was kind of a subissue in their brief. So I thought they were maybe attacking the state scheme. And then I was thinking, why isn't the attorney general in this action? I mean, even just the way Judge Tomlin articulates it, it seems to me that someone should be, the state should be represented in here somehow. I mean, it should have intervened or someone should have brought them in. I agree. They have been noticed. But from my perspective, we're just defending the sheriff's concealed weapons policy. The sheriff is not saying anything about open carry. I realize there's the California law out there, but it's not her law. Which the sheriff has sworn to uphold, is she not? Her concealed weapons policy? No, no, no. To enforce the California law that forbids open carry. Of course. Yeah, she'll have to enforce that law, but she doesn't. I mean, I think Judge Wardlaw's point is a good one, where's the state? But I'm not sure you weasel out of it quite so easily by saying, well, that's a state law, because it's the sheriff who enforces it. And in tandem, the state law in conjunction with the way she's interpreting the concealed carry law, with this personal protection, self-defense is not good enough, results in nobody being able to carry outside the home. But it doesn't make sense to me, Your Honors, if this court were to strike down the concealed weapons permit just because there's no longer open carry. It seems like the whole thing should come before this court. But as far as the concealed weapons permit, it's a reasonable regulation. It is not a complete ban. But why is this any different from the city of Chicago saying, and I guess it's the Moore case by Judge Posner, that we're not going to permit any firing ranges in the city, but that's okay because you can go to Skokie, the suburb next door, and there's a firing range there that you can demonstrate your proficiency in firearms. And the Seventh Circuit rejected the argument that you're making here on the grounds that it's not enough to say that a constitutional right can be carried out in somebody else's jurisdiction but not in ours. Well, the Moore case didn't have anything to do with concealed carry. I don't think it's really applicable. Well, the issue is whether or not you can exercise a constitutional right in Orange County as opposed to Modoc County, which I assume has less of a problem than Orange County does with this particular issue. I think it's very different. It didn't have anything to do with concealed weapons. Okay. So? Well, what the argument here is that anyone who feels anxious, feels unsafe when they go out in public, and who believes that they need to carry a concealed weapon ought to be able to get one. Isn't that the gist of what? That is Appellant's argument. Appellant's argument. And here you have a sheriff with how many people in Orange County? I don't know the exact number. There's a lot. More than 200,000. Yeah. Well, you've got millions of people living down there. And... It's within the legislature's police power to make certain rules and regulations. The sheriff takes the position that the more guns that are out there, the more likelihood there is of people shooting each other, getting mad at each other at a bar somewhere. Road rage. Mr. Zimmering's declaration, our expert declaration at the lower court level, did talk about the disproportionate use of concealed weapons in violent crimes and... But the problem with that is that doesn't tie it to concealed weapons permits. I mean, I don't dispute as a general matter the proposition that weapons are used more often in violent crimes. But that tells us nothing about the permit issue. I don't know of any studies that show that persons with concealed weapons permits are more likely or less likely than the general criminal element to carry concealed weapons and use them in violent fashion. But less permits means less concealed weapons on the street means less... Well, it might mean that the criminal element might think twice before going into a crowded theater and indiscriminately shooting people if they know they're in a state where the people that they're shooting at might pull their concealed weapons and shoot back. Well, as the court said in Kachowski, the legislature is in the best position to weigh the empirical evidence on what is... Is there any evidence in the record here that that's actually been done? Do we know that for a fact? I'm sorry, what's been done, Your Honor? I'm sorry. Is there any proof in the record here that that was done? There's some conflicting expert declarations, and our expert thinks that having concealed weapons permits... Isn't that being done through the state statutes that give discretion to sheriffs in various counties? I'm sorry, Your Honor, is what being done? Well, the sheriff decides... Right. Where does the sheriff get the power to make the decision as to who gets to carry a concealed weapon and who doesn't? The statute leaves it to her to determine what is good cause and to determine the policy. Which statute? The state statute? The state statute, correct. So they've made that determination. Correct. In outlying, sparsely inhabited counties, sheriffs there, for whatever reason, have decided that people can carry concealed weapons. Correct. And carrying a concealed weapon has not been a problem. Correct. And here you have the sheriff in Orange County that, in order to promote law enforcement, has decided that only a limited number of people are entitled to get a concealed weapons permit. Does that meet the definition of good cause on a case-by-case basis? Yes. So is there a general policy that the sheriff has other than good cause? Yes. It has to be something other than, I just fear for my safety. I don't have the language right in front of me, Your Honor. But it's more of a particularized fear, or you have a dangerous job, or there's a variety of reasons put in the policy. But it is on a case-by-case basis. Okay. And I have nothing further. Thank you. I think you understand the issues. Thank you very much. Your time is up, you know. I believe I had 12 seconds, Your Honor. Is that what it was? Nine seconds. How about 45 seconds? I would love that, Your Honor. I can do that. Thank you. Where? Judge Tolman, to address you, it was not the Moore case. I believe you're confused with the Zell case. And I think the Zell case, Zell v. City of Chicago, completely is contradictory to their position that a preliminary injunction here is not appropriate. If the judge ruled down below, Judge Selna, said there's no right to bear arms, then he was incorrect. I just want to leave the Court with a quote, that the enshrinement of constitutional rights necessarily takes certain policy choices off the table. That is what the Heller Court said. The sheriff is trying to basically argue that the right is too dangerous to exercise. And that's just not, this isn't a constitutional convention. Okay. I'm going to ask you a question, and that will give you a little bit more time. You'll get to answer it. Thank you, Your Honor. I appreciate it. What do you, what do you, what do you do with the posture of this case, though? This is on a preliminary injunction. And, and he did, you know, the proper, I mean, he applied the Winters factors, properly apply. His likelihood of success determination wasn't really that there's no such right. It was more, it's questionable whether there's this right. No court's held that there's this right. And so I can't say that you, in weighing these factors, that you have a strong case on the likelihood of success. And then he went through the other factors. Eric, Your Honor, the Ozell case, I believe, is perfectly on point from the Seventh Circuit. It was the same exact issue. And the Court said there that the novelty of the Second Amendment issue should not have been an excuse, for lack of a better term, to punt, for the lower court to punt on the legal issue and not to cite it definitively. This, this judge, Judge Selden, I apologize, essentially did that. He said, ah, there's questions. He had to, he was supposed to, with all due respect, answer that question. And I believe that this Court should answer that. But really, on a preliminary injunction, I mean, if he's, I mean, he's sitting there, he knows that there's this, the very issue is being litigated in the Ninth Circuit, right? That somebody is going to decide it in the Ninth Circuit definitively and not in the too far future. So that could have been, I mean, I wouldn't, I used to work for him as a partner at Albany, so he's a good guy. And I don't think he would punt, but he might be being conservative about saying that, you know, I know that these cases are in the pipeline. Right now, I'm not going to grant the injunction because I'm going to wait and see what the Ninth Circuit does with it. And I can appreciate that, Your Honor, from, the point here is that here, and I don't want to put words in counsel's mouth, but they put it in their brief, so I feel comfortable doing it. There's no facts at issue here. There's zero facts. This is a 100 percent question of law. So there's really, what are we going to do, what is the judge going to do, Judge Selma going to do down below if we get remanded or the preliminary injunction is denied? We're just going to resubmit the exact same briefs with a, you know, as a motion for summary judgment, are we going to go to trial? And there's no other question other than is the threshold question I've laid out, is there a right to keep and bear arms in public? And if that is decided in our favor, then I think we necessarily prevail because the judge, or the sheriff cannot request you to, or require you to prove that you have a need to exercise that right. And if I may, in closing, I just would like to point out that to your question, there are things in the record about people not committing crimes, you know, the sky is falling stuff coming from the sheriff is rebutted very well in the amicus briefs by ILEAD, the International Law Enforcement Association. I mean, I find the evidence inconclusive on both sides, but what's your response to Ms. Van Riper's argument that that's a choice for the legislature to make when they enact the concealed weapons law? I 100 percent agree that the legislature should have the choice to decide whether there's licensing requirements, whether it's going to be open carry, whether it's going to be concealed carry. By saying that there's only a right to open carry, that would actually limit the discretion of the legislature. And, you know, we don't do this, and we don't require a woman who needs abortions to say that they have a need for it. We don't require people to say that they have a need to criticize a politician under the First Amendment. So what you're saying is the legislature cannot impose a statutory scheme that prohibits all carrying of weapons in public? Correct. There has to be some manner, and the Blackstone Treatise cited in Heller explains that, that as long as there's a manner available. Thank you, Your Honors. Thank you. Thank you. Excellent argument on both sides. Yes. Thank you both. And briefing, too. Yeah. Thank you. We're going to get double time today. We'll put in our checks before the government closes down. Yeah, yeah. That'll be the day. The checks in the mail. All right. Keep your powder dry. Keep your powder dry. That's right.
judges: Pregerson, Wardlaw, Tallman